**Nos. 15-3353, 15-3354, & 15-3355 (consolidated)**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————————

IN RE: VEHICLE CARRIER SERVICE

———————————

On Appeal from the United States District Court of the District of New Jersey, No. 2:13-cv-3306 (Hon. Esther Salas)

———————————

## JOINT BRIEF OF APPELLANTS - INDIRECT PURCHASERS: END-PAYORS, TRUCK AND EQUIPMENT DEALERS, AND AUTOMOBILE DEALERS

———————————

Warren T. Burns
Daniel H. Charest
Will Thompson
E. Lawrence Vincent
**BURNS CHAREST LLP**
500 North Akard, Suite 2810
Dallas, Texas 75201
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com
wthompson@burnscharest.com
lvincent@burnscharest.com

Hollis Salzman
Bernard Persky
Meegan Hollywood
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499
hsalzman@robinskaplan.com
bpersky@robinskaplan.com
mhollywood@robinskaplan.com

Joseph W. Cotchett
Steven N. Williams
**COTCHETT, PITRE &
McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com

***Proposed Interim Co-Lead
Counsel for End-Payor Plaintiffs***

James E. Cecchi
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

***Proposed Interim Liaison Counsel for End-
Payor Plaintiffs***

Eric R. Breslin
**DUANE MORRIS LLP**
One Riverfront Plaza
1037 Raymond Boulevard, Suite 1800
Newark, New Jersey 07102
Telephone: (973) 424-2063
erbreslin@duanemorris.com

Wayne A. Mack
J. Manly Parks
Andrew Sperl
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, Pennsylvania 19103
wamack@duanemorris.com
jmparks@duanemorris.com
arsperl@duanemorris.com

***Truck and Equipment Dealer Plaintiffs
Counsel***

Peter S. Pearlman
**COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP**
Park 80 Plaza West-One
250 Pehle Ave., Suite 401
Saddle Brook, NJ 07663
Telephone: (201) 845-9600
psp@njlawfirm.com

*Automobile Dealers Liaison Counsel*


Jonathan W. Cuneo
Joel Davidow
Katherine Van Dyck
Daniel Cohen
**CUNEO GILBERT & LADUCA, LLP**
507 C Street NE
Washington, D.C. 20002
Telephone:   (202) 789-3960
jcuneo@cuneolaw.com
joel@cuneolaw.com
kvandyck@cuneolaw.com
danielc@cuneolaw.com

Benjamin David Elga
**CUNEO GILBERT & LADUCA, LLP**
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone:   (202) 789-3960
belga@cuneolaw.com

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
404 Court Square
P.O. Box 927
Lexington, Mississippi 39095
Telephone:   (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
Paul A. Sand
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, Minnesota  55101
Telephone: (651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

*Automobile Dealers Interim Co-Lead
Counsel*

Dewitt Lovelace
Valerie Nettles
**LOVELACE & ASSOCIATES, P.A.**
Suite 200
12870 US Hwy 98 West
Miramar Beach, Florida 32550
Telephone:   (850) 837-6020
dml@lovelacelaw.com
alex@lovelacelaw.com

Gerard V. Mantese
David Hansma
Brendan Frey
**MANTESE HONIGMAN
ROSSMAN & WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone:   (248) 457-9200
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com

Ben F. Pierce Gore
**PRATT & ASSOCIATES**
1871 The Alameda, Suite 425
San Jose, California 95126
Telephone:        (408) 369-0800
gore@prattattorneys.com

Charles Barrett
**CHARLES BARRETT, P.C.**
6518 Highway 100, Suite 210
Nashville, Tennessee 37205
Telephone:   (615) 515-3393
charles@cfbfirm.com

Thomas P. Thrash
**THRASH LAW FIRM, P.A.**
1101 Garland Street
Little Rock, Arkansas 72201
Telephone:   (501) 374-1058
tomthrash@sbcglobal.net

Armand Derfner, Esq.
**DERFNER, ALTMAN & WILBORN**
575 King Street, Suite B
Charleston, South Carolina 29403
Telephone:   (843) 723-9804
aderfner@dawlegal.com

*Additional Automobile Dealers Counsel*

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request this Court grant oral argument for this consolidated appeal as it involves questions of first impression concerning significant issues of statutory interpretation.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, the End-Payors and Automobile Dealers Plaintiffs Appellants make the following disclosure:

1. For non-governmental corporate parties, please list all parent corporations: none.

2. For non-governmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock: none.

3. There is no publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding.

4. This is not a bankruptcy appeal.


Dated: June 20, 2016

/s/ Warren T. Burns
Warren T. Burns

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, the Truck and Equipment Dealer Plaintiff Appellants[1] make the following disclosure:

1. For non-governmental corporate parties, please list all parent corporations:

   Rush Enterprises, Inc.

2. For non-governmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock:

   Rush Enterprises, Inc.

3. If there is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

   Rush Enterprises, Inc. (100% owner)

4. This is not a bankruptcy appeal.


Dated: June 20, 2016

/s/ Andrew R. Sperl
Andrew R. Sperl

---

[1]    Rush Truck Centers of Arizona, Inc.; Rush Truck Centers of California, Inc.; Rush Truck Centers of Colorado, Inc.; Rush Truck Centers of Florida, Inc.; Rush Truck Centers of Georgia, Inc.; Rush Truck Centers of Idaho, Inc.; Rush Truck Centers of Kansas, Inc.; Rush Truck Centers of North Carolina, Inc.; Rush Truck Centers of Ohio, Inc.; Rush Truck Centers of Oklahoma, Inc.; Rush Truck Centers of Texas, LP; and Rush Truck Centers of Utah, Inc.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT.................................................. v

CORPORATE DISCLOSURE STATEMENT ....................................................... v

TABLE OF CONTENTS.......................................................................................vii

TABLE OF CITATIONS ....................................................................................... x

STATEMENT OF JURISDICTION........................................................................ 1

STATEMENT OF ISSUES PRESENTED................................................................ 1

STATEMENT OF RELATED CASES .................................................................... 2

STATEMENT OF THE CASE................................................................................. 2

STATEMENT OF FACTS ...................................................................................... 3

SUMMARY OF THE ARGUMENT ..................................................................... 10

STANDARD OF REVIEW ................................................................................... 13

ARGUMENT......................................................................................................... 14

    I.  The district court's dismissal of the federal antitrust claim is based on
        an incorrect reading of the Shipping Act and is contrary to the plain
        language of the statute ................................................................................ 14

        A. Appellees are not entitled to an exemption from the antitrust laws
            because they did not file their illegal agreement ..................................... 15

        B. The district court disregarded the plain language of the Act in
            favor of a strained construction that cannot be squared with the
            statute as a whole or relevant precedent. .................................................. 18

        C. The district court erroneously concluded that Appellants' plain,
            consistent reading of § 40307 would render a portion of § 41102
            "surplusage." ........................................................................................... 21

        D. The district court improperly relied on the legislative history of a
            bill that Congress rejected, yet failed to credit the legislative
            history of the bill that Congress actually passed. ..................................... 24

E. Conclusion: Appellants' federal antitrust claim was improperly dismissed as no antitrust exemption applies to Appellees' anticompetitive conduct.27

II. In dismissing plaintiffs' state-law claims on conflict-preemption grounds, the district court created a conflict where none truly exists. ........................................................................................... 29

A. The district court's refusal to apply the presumption against preemption conflicts with binding precedent from the Supreme Court and the Third Circuit. .................................................. 30

B. The fact that Congress did not preempt state law claims when it passed the Shipping Act of 1984 should have ended the preemption inquiry.................................................................................... 32

C. There is no conflict between Appellants' state law claims and the regulatory scheme administered by the FMC – *especially* with regard to agreements the FMC did not know existed............................ 34

D. No other court has found conflict preemption of state law claims under the Shipping Act.......................................................... 38

E. The court below erred in relying on inapplicable legislative history to support its finding of conflict preemption............................ 40

F. The district court's decision conflicts with binding precedent of the U.S. Supreme Court permitting prosecution of claims outside the ambit of the FMC. ................................................................ 42

G. Conclusion: The heavy burden to justify dismissal of Appellants' state law antitrust and consumer protection claims was not met; there is no conflict between prosecution of those claims and administration of the Act's regulatory scheme by the FMC. ................. 44

III. The district court erred in concluding that it lacked subject matter jurisdiction to effectuate settlements with the two largest defendants. ........ 44

A. The court had jurisdiction to grant the relief sought because it could have severed the settled claims and administered the Rule 23 procedures for certification and approval of the settlements................... 44

B. The lack of a filed motion for approval of the settlements did not provide a basis for the district court to refuse to retain jurisdiction. ........ 46

C.  The district court's refusal to effectuate the settlements blocks
American consumers from compensation for their antitrust injuries
and is inconsistent with "the strong judicial policy in favor of
parties voluntarily settling lawsuits." ...................................................... 47

CONCLUSION ................................................................................................. 48

CERTIFICATE OF SERVICE ............................................................... 50

CERTIFICATE OF BAR MEMBERSHIP .............................................. 51

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS .......................... 51

CERTIFICATE OF VIRUS CHECK .................................................... 51

WORD COUNT ................................................................................... 52

# TABLE OF CITATIONS

**Cases**                                                                    **Page**

*Alaka v. Attorney General*, 456 F.3d 88 (3d Cir. 2006)..........................................13

*Broselow v. Fisher*, 319 F.3d 605 (3d Cir. 2003) ....................................................21

*Bruesewitz v. Wyeth, Inc.*, 561 F.3d 233 (3d Cir. 2009) ..........................................24

*California v. ARC America Corp.*, 490 U.S. 93 (1989)..............................................33

*Carnation Co. v. Pac. Westbound Conference*, 383 U.S. 213 (1966) ........20, 27, 42

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ...............................31

*Farina v. Nokia Inc.*, 625 F.3d 97 (3d Cir. 2010) .....................................................13

*FMC v. Seatrains Lines, Inc.*, 411 U.S. 726 (1973)..................................................20

*Good v. Pennsylvania Railroad Co.*, 384 F.2d 989 (3d Cir. 1967) ........................46

*Green v. John H. Lewis & Co.*, 436 F.2d 389 (3d Cir. 1970)...................................46

*Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205 (1979) ..........20, 27

*Halderman v. Pennhurst State School and Hosp.*,
    901 F.2d 311 (3d Cir. 1990) ..........................................................................46

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ............................................................................46

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010).........................27

*In re Johnson*, 2004 Bankr. Lexis 2606 (Bankr. E.D. Pa.) .....................................47

*In re Ocean Shipping Antitrust Litigation*, 27
    500 F. Supp. 1235 (S.D.N.Y. 1980) ..............................................................27

*In re Processed Egg Prods. Antitrust Litig.*,
    836 F. Supp. 2d 290 (E.D. Pa. 2011).............................................................44

*In re Stock Exchanges Options Trading Antitrust Litigation*,
    317 F.3d 134 (2d Cir. 2003) ...................................................................45, 47

x

*In re Vehicle Carrier Services Antitrust Litigation*,
MDL docket, No. 2471, Master Docket No. 13-3306
In the United States District Court for the District of New Jersey ................ 2

*Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329 (3d Cir. 1985) ............ 13

*Madruga v. Superior Court*, 346 U.S. 556 (1954) ................................................. 30

*MD Mall Assocs. v. CSX Transp., Inc.*,
715 F.3d 479 (3d Cir. 2013), *as amended* (May 30, 2013) ......................... 34

*Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) ............................................... 29

*Pacific Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990) .............. 37

*Pa. Med. Soc. v. Marconis*, 942 F.2d 842 (3d Cir. 1991) ................................ 31, 32

*Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77 (3d Cir. 1982) ................................. 47

*Pinney Dock & Trans. Co. v. Penn Cent. Corp.*,
600 F. Supp. 859 (N.D. Ohio 1983) ............................................................ 27

*Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500 (3d Cir. 2012) .......................... 19

*Pugh v. Super Fresh Food Markets. Inc.*, 640 F. Supp. 1306 (E.D. Pa. 1986) ....... 47

*Rosso v. Foodsales. Inc.*, 500 F. Supp. 274 (E.D. Pa. 1980) ................................. 47

*Sabre Shipping Corp. v. American President Lines*,
285 F. Supp. 949 (1968); 395 U.S. (1969) .................................................. 40

*Seawinds, Ltd. v. Nedlloyd Lines, B.V.*,
80 B.R. 181 (N.D. Cal. 1987), *aff'd*, 846 F.2d 586 (1988) ......................... 39

*Sikkelee v. Precision Airmotive Corp.*,
2016 U.S. App. Lexis 7015 (3d Cir. April 19, 2016) .................................. 29

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ..................................................................................... 44

*Szehinskyj v. Atty. Gen. of U.S.*, 432 F.3d 253 (3d Cir. 2005) .............................. 24

*United States v. Gonzales*, 520 U.S. 1 (1997) ....................................................... 24

*United States v. Gosselin World Wide Moving, N.V.*,
   411 F.3d 502 (4th Cir. 2005) ................................................................15-21

*Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398 (7th Cir. 2001) .......................... 44

*Wyeth v. Levine*, 555 U.S. 555 (2009) ............................................................. 29, 32

*Wylie v. Foss Mar. Co.*, 2008 WL 4104304 (N.D. Cal. Sept. 4, 2008) .................. 37

*Zachry-Dillingham v. Am. President Lines, Ltd.*,
   739 S.W.2d 420 (Tex. App. – San Antonio 1987, writ denied) .............37-39

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012).............................. 34

## Statutes and rules                                                    Page

28 U.S.C. § 1291 ................................................................................................. 1

28 U.S.C. § 1331 ............................................................................................. 1, 13

28 U.S.C. § 1332 ........................................................................................ 1, 13, 44

28 U.S.C. § 1337 ................................................................................................. 1

28 U.S.C. § 1367 ................................................................................................. 1

28 U.S.C. § 2107 ................................................................................................. 1

46 U.S.C. § 31307 ............................................................................................. 32

46 U.S.C. § 40101 ........................................................................................... 7, 39

46 U.S.C. § 40102 ............................................................................................. 36

46 U.S.C. § 40301 ...................................................................................8, 15-16, 23

46 U.S.C. § 40302 ......................................................................................... 16, 18

46 U.S.C. § 40304 ............................................................................................. 22

46 U.S.C. § 40307 ....................................................................................... *passim*

46 U.S.C. § 41102 ......................................................................................... 18, 21

Fed. R. Civ. P. 59(e) ............................................................... 3, 43, 46

Fed. R. Civ. P. 60(b) ................................................................. 3, 46

**Miscellaneous**                                                                                    **Page**

P.L. 105-258, 112 Stat. 1902 (1998)........................................ 6

P.L. 109-304, 120 Stat. 1485 (2006) ...................................... 6

House Bill H.R. 1878 (1983) .................................................24, 39-40

Senate Bill S. 47 (1984) ......................................................... 23

H. Rep. 98-53 (1983) ............................................................24-26, 39-40

H. Rep. 98-600 (1984) ...........................................................23-26, 41

C. Buderi, *Conflict and Compromise: The Shipping Act of 1984*,
     BERKELEY J. INT'L L. 311 (1984) .................................. 36

W. Casto, *The Origins of Federal Admiralty Jurisdiction
     in an Age of Privateers, Smugglers, and Pirates*,
     37 AM. J. LEGAL HIST. 117 (1993)................................. 30

G. Garvey, *Regulatory Reform in the Ocean Shipping Industry:
     An Extraordinary U.S. Commitment to Cartels*,
     18 GEO. WASH. J. INT'L L. & ECON. 1 (1984)............................ 26

H. Hovenkamp, *State Antitrust in the Federal Scheme*,
     58 INDIANA L.J. 375 (1983) .......................................... 30

RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW
     OF THE U.S. § 415 (1987)............................................. 26

## STATEMENT OF JURISDICTION

This is an appeal from the final judgment of a United States district court; this Court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court had jurisdiction over Appellants federal claims under 28 U.S.C. §§ 1331 and 1337, and over Appellants' state law claims under 28 U.S.C. §§ 1332(d) and 1367.  The district court entered a final order dismissing all of Appellants' claims on August 28, 2015. Appellants filed their notice of appeal on September 25, 2015, making their appeal timely under 28 U.S.C. § 2107.  The district court denied Appellants' post-judgment motions seeking to effectuate class-wide settlements on April 25, 2016. Appellants filed their timely amended notice of appeal of the post-judgment motions on May 24, 2016.

## STATEMENT OF ISSUES PRESENTED

1.    Whether the district court erred in holding that the Shipping Act of 1984 – which incentivizes ocean carriers to file potentially anticompetitive agreements with the Federal Maritime Commission ("FMC") – gives carriers blanket antitrust immunity for all activities undertaken pursuant to any illegal agreement, irrespective of whether such agreement is withheld from the FMC.

2.    Whether the district court erred in concluding that the Shipping Act of 1984 preempts state antitrust laws based on conflict preemption notwithstanding presumptions against preemption, silence in the statute and legislative history

concerning the operation of state antitrust laws, and the absence of any actual conflict or obstacle to the accomplishment of Congress's legislative goals.

3.    Whether the district erred in concluding that it lacked subject matter jurisdiction to effectuate class-wide settlements with two major defendants when there was never a dispute regarding the district court's subject matter jurisdiction.

## STATEMENT OF RELATED CASES

The instant appeal arises from a consolidated MDL docket, No. 2471, Master Docket No. 13-3306, *In re Vehicle Carrier Services Antitrust Litigation*, in the United States District Court for the District of New Jersey. The cases have been consolidated on appeal as Nos. 15-3353, 15-3354, and 15-3355.

## STATEMENT OF THE CASE

A massive, international conspiracy to fix prices, allocate customers, and restrict capacity for vehicle carrier services has caused American consumers and businesses to pay higher prices for vehicle carrier service charges on many popular makes and models of cars and trucks shipped to the United States.  *See* J.A. 410-501.

Appellants filed class actions on behalf of various indirect purchasers of those services for damages and injunctive relief under federal and state antitrust and consumer protection statutes, as well as common law unjust enrichment.

On October 8, 2013, the Judicial Panel on Multi-District Litigation transferred and consolidated Appellants' actions in the District of New Jersey.

On August 28, 2015, the district court granted Appellees' motion to dismiss under Fed. R. Civ. P. 12(b)(6), finding that the Shipping Act of 1984 both (a) barred Appellants' federal law claim and (b) preempted all state law claims under the theory of conflict preemption.

Thereafter, the court refused to effectuate settlements reached prior to its ruling on the motions to dismiss, stating the dismissal on conflict preemption eliminated the court's subject matter jurisdiction, and that neither Fed. R. Civ. P. 59(e) nor 60(b) were appropriate vehicles to consummate the requested relief.

The rulings presented for review are (a) the dismissal of all claims below, and (b) the denial of Appellants' motions under Fed. R. Civ. P. 59(e) and 60(b).

## STATEMENT OF FACTS

Appellants comprise three groups – End-Payors, Automobile Dealers, and Truck & Equipment Dealers – of indirect purchasers of vehicle carrier services who have been injured by an admitted conspiracy of vehicle carrier companies to fix prices, allocate customers and routes, and restrict capacity.  J.A. 6-15.  This consolidated brief is submitted on behalf of all Indirect Purchaser Plaintiffs.

Appellees are ocean shipping companies who sell their services to transport large numbers of vehicles between foreign countries and the United States.  J.A.

31.   Appellees entered into various collusive, secret agreements to fix and increase the prices paid for vehicle carrier services to and from the United States through various means of market manipulation.  J.A. 31-32; 180-96; 307-34. For example:

- From as early as 1997, certain Appellees met repeatedly to coordinate price increases on shipping routes (J.A. 322);

- In late 2007 or early 2008, executives from Appellees "K" Line, MOL, and NYK Line, the world's three largest vehicle carrier companies, met several times to coordinate an agreed ten percent price increase on the Japan-to-US shipping route (J.A. 323);

- Appellees met repeatedly to agree on market allocation (J.A. 325-26); and

- Appellees agreed to restrict capacity in the market for vehicle carrier services (J.A. 327-28).

None of these illegal agreements were filed with the Federal Maritime Commission ("FMC").  J.A. 40, 44.

In September 2012, competition authorities in Japan, the United States, Canada, and Europe commenced an investigation of the vehicle carrier services industry by conducting dawn raids at the Japanese and European offices of certain of the Appellees.  J.A. 293-94.  Since that time, several of the Appellees have

pleaded guilty to price fixing charges in the United States and have paid significant fines abroad.  For example:

- Appellee C.S.A.V. pleaded guilty to participating in a price-fixing conspiracy on February 27, 2014, and agreed to pay an $8.9 million fine to U.S. authorities (J.A. 328);

- Appellee K Line agreed to plead guilty to the price-fixing conspiracy on September 26, 2014, and to pay a $67.7 million fine to U.S. authorities (J.A. 480);

- Japanese competition authorities fined Appellees NYK Line ($128.4 million), K Line ($55.9 million), and WWL ($34.3 million) for their participation in the price-fixing conspiracy (J.A. 329).

Appellants purchased new vehicles from their original manufacturers and paid the illegally inflated costs of that transport.  J.A. 32; 180-196; 307-34.

Prior to the dismissal below, Appellants informed the court that they had reached settlements with two of the principal Appellee groups: the K-Line Defendants (Kawasaki Kisen Kaisha, Ltd. And "K" Line America, Inc.), and the MOL Defendants (Mitsui O.S.K. Lines, Ltd., Mitsui O.S.K. Bulk Shipping (U.S.A.), Inc., and World Logistics Service (U.S.A.), Inc.  J.A. 29 n.1; 392.  These settlements would have resolved Appellants' claims against two of the three Japanese carrier groups against whom Appellants had brought suit, and would have

provided significant compensation to parties injured by Appellees' admitted anticompetitive conduct.[2]

At and after argument on the motions to dismiss, Appellees advised the district court of those settlement agreements and requested that the district court stay the proceedings at least with regard to those Appellees so that the necessary documents could be finalized and filed to consummate, gain approval under Rule 23, and implement the class-wide settlements.   J.A. 59.  The district court rejected those requests.  J.A. 28.

## THE SHIPPING ACT OF 1984

Congress passed the Shipping Act of 1984 (the "Act")[3] with the following express purposes:

> (1) establish a nondiscriminatory regulatory process for the common carriage of goods by water in the foreign commerce of the United States with a minimum of government intervention and regulatory costs;

> (2) provide an efficient and economic transportation system in the ocean commerce of the United States that

---

[2]   In contrast, none of the various guilty pleas entered in to by the Appellees provide for any compensation to be paid to the market victims of their conspiracy. *See* J.A. 410-501.

[3]   The Shipping Act of 1984 was amended by the Ocean Shipping Reform Act of 1998.  *See* P.L. 105-258, 112 Stat. 1902 (October 14, 1998).  Thereafter, on October 14, 2006, the President signed a bill reenacting the Act as positive law. *See* P.L. 109-304, 120 Stat. 1485 (2006).  The codification expressly did not alter the "policy, intent, and purpose" of the law as previously organized. *Id.*

is, insofar as possible, in harmony with, and responsive to, international shipping practices;

(3) encourage the development of an economically sound and efficient liner fleet of vessels of the United States capable of meeting national security needs; and

(4) promote the growth and development of United States exports through competitive and efficient ocean transportation and by placing a greater reliance on the marketplace.

46 U.S.C. § 40101. In relevant part, the Act regulates certain agreements by Ocean

Common Carriers to:

(1) discuss, fix, or regulate transportation rates, including through rates, cargo space accommodations, and other conditions of service;

(2) pool or apportion traffic, revenues, earnings, or losses;

(3) allot ports or regulate the number and character of voyages between ports;

(4) regulate the volume or character of cargo or passenger traffic to be carried;

(5) engage in an exclusive, preferential, or cooperative working arrangement between themselves or with a marine terminal operator;

(6) control, regulate, or prevent competition in international ocean transportation; or

(7) discuss and agree on any matter related to a service contract.

*Id.* § 40301(a). The Act specifies that such agreements must be filed with the FMC, with limited exceptions not present in this case: "A true copy of every agreement referred to in section 40301(a) or (b) of this title *shall be filed* with the Federal Maritime Commission. If the agreement is oral, a complete memorandum specifying in detail the substance of the agreement *shall be filed.*" *Id.* § 40302(a) (emphasis added).

The Act contains an express exemption from the antitrust laws for certain agreements. The scope of that exemption is prescribed in section 40307:

> (a) In General. – The antitrust laws **do not apply to** –
>
>> (1) an agreement (including an assessment agreement) that has been filed and is effective under this chapter;
>>
>> (2) an agreement that is exempt under section 40103 of this title from any requirement of this part;
>>
>> (3) an agreement or activity within the scope of this part, whether permitted under or prohibited by this part, undertaken or entered into with a reasonable basis to conclude that it is–
>>
>>> (A) pursuant to an agreement on file with the Federal Maritime Commission and in effect when the activity takes place; or
>>>
>>> (B) exempt under section 40103 of this title from any filing or publication requirement of this part;
>>
>> (4) an agreement or activity relating to transportation services within or between foreign countries, whether or not via the United States, unless the agreement or activity has a direct, substantial, and reasonably

8

foreseeable effect on the commerce of the United States;

(5) an agreement or activity relating to the foreign inland segment of through transportation that is part of transportation provided in a United States import or export trade;

(6) an agreement or activity to provide wharfage, dock, warehouse, or other terminal facilities outside the United States; or

(7) an agreement, modification, or cancellation approved before June 18, 1984, by the Commission under section 15 of the Shipping Act, 1916, or permitted under section 14b of that Act, and any properly published tariff, rate, fare, or charge, or classification, rule, or regulation explanatory thereof implementing that agreement, modification, or cancellation.

*Id.* § 40307(a) (emphasis added). The Act further provides protection to carriers who comply with the filing and other provisions of the Act where antitrust immunity is subsequently revoked: "A determination by an agency or court that results in the denial or removal of the immunity to the antitrust laws under subsection (a) does not remove or alter the antitrust immunity for the period before the determination." *Id.* § 40307(c).

After prescribing its scope in section 40307(a), the Act specifies that the antitrust exemption for qualifying agreements extends to civil suits under federal law: "A person may not recover damages under section 4 of the Clayton Act (15

U.S.C. 15), or obtain injunctive relief under section 16 of that Act (15 U.S.C. 26), for conduct prohibited by this part." *Id.* § 40307(d).

## SUMMARY OF THE ARGUMENT

This case centers on the interplay between the Shipping Act and federal and state antitrust laws. The Act provides that private litigants may not bring an action for damages under the Sherman and Clayton Acts for conduct by carriers pursuant to an agreement that has been filed with the FMC. This antitrust exemption provides a powerful incentive to carriers to file their agreements with the FMC and thereby gain the protection provided by the Act's antitrust exemption. The provision also ensures that the FMC may use its regulatory expertise to scrutinize filed agreements for compliance with the Act and promulgated regulations. The Act is silent as to the operation of state antitrust laws, which predate the Act by more than 100 years.

Through a strained reading of the Act, the district court dramatically expanded the scope of the Act's antitrust exemption, finding that it applied even when carriers have not filed their illegal, anti-competitive agreements with the FMC. The district court's decision creates perverse incentives that actually *encourage* ocean carriers to engage in anticompetitive behavior and *not* report that conduct to the FMC.

The Act provides antitrust immunity to ocean carriers as part of a *quid pro quo* established in the Act's filing requirements. The Act requires ocean carriers, like Appellees, to file certain agreements between them which affect commerce flowing to the United States. Provided that the carriers have acted in a good faith belief that their agreement complies with the Act, including the Act's competition provisions, the carriers are immune from suit under the Sherman and Clayton Acts even while approval of their agreement is pending. Requiring the carriers to file provides the FMC the ability to scrutinize the agreements.

What happens, then, if carriers choose not to file their agreement – like the illegal price-fixing agreements at issue in this case? Under a plain reading of the Act – and common sense – the benefit of antitrust immunity does not extend to such unfiled agreements. It would make no sense to conclude that such immunity applies to unfiled agreements because Congress obviously did not intend for the Act to confer the exemption on carriers who acted contrary to federal antitrust laws *and* the Act.

But that is precisely the result of the district court's opinion. Under the district court's interpretation of the Act, ocean carriers are actually incentivized to conceal anticompetitive agreements from the FMC; the failure to file means that the agreements are not subject to agency review. However, if the agreements are

subsequently uncovered and found to be anticompetitive, the carriers would nevertheless be immune from antitrust liability in federal and state court.

In short, the district court's opinion undermines the Act's fundamental purpose of discouraging covert, anticompetitive agreements and upsets the reasonable balance that Congress struck.    The decision below is not only unprecedented; it runs contrary to a plain reading of the statute and the Act's legislative history, applicable precedent, and the well-settled rule that antitrust exemptions must be narrowly construed.

The district court also erred in finding that the Act preempted the operation of the state antitrust laws at the heart of Appellants' claims.    In dismissing Appellants' state law claims, the decision fails to respect the well-established presumption against implied preemption.  The district court went on to perceive an illusory conflict between allowing states discretion to proscribe anticompetitive conduct (which Congress has permitted for over a century) with one of the Act's prefatory, general statements of purpose – even though the opinion *acknowledges* that permitting Appellants' claims would actually *promote* one of the Act's *other* stated purposes.  The district court reached this result despite the absence of any actual direct statutory conflict, silence in the relevant legislative history, and in the face of case authority contrary to its decision.

Finally, the district court erred by not effectuating the settlements that Appellants reached with two of the largest defendants in the case, depriving American consumers and businesses of significant compensation for their injuries. After deciding that the Act impliedly preempted Appellants' federal and state claims, the district court compounded its error by concluding that such preemption robbed the court of its underlying federal subject matter jurisdiction. The district court obtained subject matter jurisdiction at the outset of the case under § 1331 when the plaintiffs sued under federal antitrust law as well as under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). Those jurisdictional bases undeniably provided the district court with authority to hear and effectuate the settlements, making the district court's jurisdictional holding legally erroneous and contrary to longstanding precedent.

## STANDARD OF REVIEW

This Court reviews questions of preemption *de novo*. *Farina v. Nokia Inc.*, 625 F.3d 97, 115 n.20 (3d Cir. 2010). The district court's denial of Appellants' post-judgment motions on jurisdictional grounds presents a question of law which is reviewed *de novo*, and its denial of Appellants' request to hear and adjudicate the class-wide settlements is reviewed for an abuse of discretion. *Alaka v. Attorney General*, 456 F.3d 88, 94 n.8 (3d Cir. 2006); *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir. 1985).

## **ARGUMENT**

**I.    The district court's dismissal of the federal antitrust claim is based on an incorrect reading of the Shipping Act and is contrary to the plain language of the statute.**

The district court's conclusion that the Shipping Act exempts carriers who choose not to file their illegal, price-fixing agreements from civil liability under federal antitrust law must be reversed. The district court dismissed Appellants' federal antitrust claim, holding that "because ocean common carriers are prohibited from operating under an unfiled agreement that is required to be filed with the FMC, the Shipping Act provides an exemption for claims under the Clayton Act under section 40307(d)." J.A. 36.

The district court acknowledged that Appellants' federal claim is based on agreements between Appellees that had *never* been filed with the FMC. And the district court acknowledged that those agreements spawned conduct that violated federal and state antitrust laws.  J.A. 37-38, 40, 44.

However. based on a manifestly incorrect reading of the Act and its legislative history, the district court has, for the first time, forged § 40307(d) into an absolute shield of immunity for any conduct ever undertaken by any vessel-operating common carrier pursuant to any written or oral agreement, whether or not that agreement is reduced to writing, filed with, or subjected to oversight and investigation by the FMC.  Such a sweeping reading of § 40307(d) runs counter to

both the statute's language as well as controlling precedent, and it undermines a fundamental purpose of the Act. Moreover, accepting the district court's opinion creates a circuit split with the Fourth Circuit, which ruled in 2005 that the Shipping Act's antitrust exemption should be applied narrowly. *See United States v. Gosselin World Wide Moving, N.V.*, 411 F.3d 502 (4th Cir. 2005).

If this Court adopts a plain reading of the statute, it need go no further to reverse the judgment dismissing Appellants' claims, and the Court need not address whether the Act preempts state antitrust laws or the reasoning behind the district court's rulings on Appellants' post-trial motions.

### A.    Appellees are not entitled to an exemption from the antitrust laws because they did not file their illegal agreement.

There can be no argument – nor was any such argument made in the district court – that the Appellees' unlawful, price fixing agreement falls within the scope of the Act.  Relevant here, the Act applies to:

- Agreements between carriers to fix or regulate transportation rates (46 U.S.C. § 40301(a)(1);
- Agreements between carriers to pool or apportion traffic (*id.* § 40301(a)(2));
- Agreements between carriers to engage in cooperative working arrangements (*id.* § 40301(a)(5)); and
- Agreements between carriers to control or prevent competition (*id.* § 40301(a)(6)).

Appellees' price fixing agreement squarely falls within the scope of the preceding provisions.

Because the Act unambiguously applies to Appellees' unlawful agreement under section 40301(a), there also can be no dispute that the Act required Appellees to file the agreement with the FMC.  Section 40302(a) provides in relevant part: "A true copy of every agreement referred to in section 40301(a) … of this title shall be filed with the Federal Maritime Commission.  If the agreement is oral, a complete memorandum specifying in detail the substance of the agreement shall be filed."  The two narrow exceptions to this requirement – for agreements related to transportation within or between foreign countries and agreements to engage in activities related to marine terminals – do not apply to Appellees' illegal, price-fixing agreement.

And there is no dispute that Appellees failed to file their price-fixing agreement with the FMC at any time before authorities across the globe began raiding their offices.  This indisputable fact forecloses the application of any antitrust exemption to Appellees' unlawful agreement.

Section 40307(a) of the Act prescribes the scope of the antitrust exemption in clear terms.  Only certain agreements enumerated in seven sub-sections receive the benefit of the exemption prescribed in the Act.  None apply here.

- Filed and effective agreements:  The exemption does not apply to Appellees' agreement because Appellees never filed the agreement

and because the agreement never became effective after FMC review. *Id.* § 40307(a)(1).

- Exempt agreements under section 40103:  Section 40103 permits the FMC to exempt certain agreements from filing requirements.  There is no dispute that the FMC did not exempt Appellees from filing their unlawful agreement.  *Id.* § 40307(a)(2).

- "Reasonable Basis" agreements:  The Act provides an antitrust exemption to agreements or activities, whether permitted or prohibited by the Act, that were undertaken with a reasonable basis to conclude that the agreement was pursuant to a pre-existing agreement filed with the FMC and in effect (*id.* § 40307(a)(3)(A)) or exempt from filing under section 40103 (*id.* § 40307(a)(3)(B)).  Neither provision applies here.  There is no argument that Appellees' unlawful agreement was subject to a filed and effective agreement.  And, as shown *infra*, there could be no reasonable basis to conclude that Appellees' illegal agreement had been exempted from filing under section 40103.

- Agreements related to transportation services solely within or between foreign countries:  Appellees have made no such argument.  *Id.* § 40307(a)(4).

- Agreements related to foreign inland segments:  Appellees have made no such argument.  *Id.* § 40307(a)(5).

- Agreements related to the provision of wharfage, dock, warehouse, or other terminal facilities outside the United States:  Such an agreement is inapplicable on its face and no such argument was made in the district court.  *Id.* § 40307(a)(6).

- Certain agreements approved before 1984:  Again, these agreements are not relevant in this case.  *Id.* § 40307(a)(7).

Put simply, Appellees cannot point to single provision in the plain text of the Act that applies or even suggests the the Act's antitrust exemption should be applied to shield their ***unfiled***, illegal, price-fixing agreement.

17

B.    **The district court disregarded the plain language of the Act in favor of a strained construction that cannot be squared with the statute as a whole or relevant precedent.**

Disregarding the plain text delineating the scope of the Act's antitrust exemption, the district court dramatically expanded that exemption by misconstruing section 40307(d).  Section 40307(d) provides: "A person may not recover damages under section 4 of the Clayton Act (15 U.S.C. 15), or obtain injunctive relief under section 16 of that Act (15 U.S.C. 26), for conduct prohibited by this part."  Section 40307(d) cannot be read in isolation.  It exists as the fourth sub-section to section 40307 and must be read in that context.  The district court failed to properly conduct that analysis.

After stating that § 40307(d)'s antitrust exemption prohibits private actions based on "conduct **prohibited** by this part," the district court's opinion jumps to section 40302(a)'s requirement that all "agreements" be reduced to writing and filed with the FMC, to then conclude that § *41102(b)(1)*'s proscription against operating under an unfiled agreement brings Appellee's actions within the antitrust exemption because *the failure to file an agreement* for review by the FMC is itself "**prohibited**."  J.A. 40-44.  The court's analysis is flawed.

The more natural (and correct) reading of the statute is to read § 40307 – **"Exemption from antitrust laws"** – as a whole, having § 40307(*d*)'s exemption

18

include those circumstances delineated in the associated § 40307(***a***), a reading that limits the antitrust exemption to those actions performed:

    i.    under an agreement *that has been filed and is effective* under §§ 40302(a) and 40304(c);

    ii.    under an agreement *that is exempt from filing* under § 40103; or

    iii.    with a reasonable basis to conclude that they were undertaken pursuant to an agreement *that either had been filed or was exempt from filing*.[4]

Therefore, only in those circumstances in which Congress expressly delineated does the antitrust exemption apply.

Indeed, this interpretation was adopted by the Fourth Circuit Court of Appeals in *United States v. Gosselin World Wide Moving, N.V.*, 411 F.3d 502 (4th Cir. 2005), one of the few cases to interpret the antitrust exemption in the Act. After acknowledging the U.S. Supreme Court's consistently narrow construction of statutory antitrust exemptions, and the history of the particular exemption contained in the Act, the Fourth Circuit stated that the antitrust exemption provided

---

[4]    Indeed, when interpreting the contract at issue in *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 520 (3d Cir. 2012), this Court used language equally applicable to this statutory interpretation matter: "[T]he District Court's conclusion goes against two canons of contract interpretation.  Under the principle of *ejusdem generis*, '[i]t is widely accepted that general expressions such as "including, but not limited to" that precede a specific list of included items should not be construed in their widest context, but apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples." Similarly, '[t]he ancient maxim "noscitur a sociis" summarizes the rule that the meaning of words may be indicated or controlled by those words with which they are associated. Words are known by the company they keep'.") (citations omitted). As shown above, the remaining portions of the antitrust exemption registry in § 40307(a) do not apply to, and have not been invoked in, this case.

by the Act "came with regulatory strings attached" designed to prevent an abuse of the grant of immunity. *Id.* The Fourth Circuit then measured the reach of the exemption against the specific language of what is now § 40307(a) – the actual delineation of immunized activities. *Id.* at 509-14.

In doing so, the Fourth Circuit read the subsection as a whole, giving effect to the "traditional canon of narrow construction applicable to antitrust exemptions generally" which the Supreme Court had previously found "applied with full force to the 1916 Act." 411 F.3d at 509 (citing *FMC v. Seatrains Lines, Inc.*, 411 U.S. 726, 732-33 (1973); *Carnation Co. v. Pac. Westbound Conference*, 383 U.S. 213, 217-18 (1966)). The Fourth Circuit went on to note that while the 1916 Act "was supplemented by the Shipping Act of 1984," the new Act did not change the analysis:

> Although the 1984 Act contained several new grants of antitrust immunity, *see id.* § 1706(a), nowhere in the 1984 Act did Congress indicate an intention to override the principle of narrow construction for antitrust exemptions that the Supreme Court had long applied to the 1916 Act. Moreover, this interpretive maxim has informed the construction of every other grant of antitrust immunity in federal legislation. We therefore find no reason to depart from ordinary practice in construing the Act.

*Id.*; *see also Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 231 (1979) ("It is well settled that exemptions from the antitrust laws are to be narrowly construed. This doctrine is not limited to implicit exemptions from

the antitrust laws, but applies with equal force to express statutory exemptions.").

In contrast to the result reached by the Fourth Circuit in *Gosselin*, the opinion below allows common carriers to run roughshod over the antitrust exemption and cannot be squared with the statutory language. This Court should reverse the district court, follow the well-reasoned approach of its sister circuit in *Gosselin*, and decline to unnecessarily create a circuit split.

### C. The district court erroneously concluded that Appellants' plain, consistent reading of § 40307 would render a portion of § 41102 "surplusage."

Likewise in stark contrast to the analysis in *Gosselin*, the district court expressly *rejected* a construction of § 40307(d) that limits antitrust immunity to conduct under agreements filed (or exempt from filing) with the FMC. J.A. 42. The district court reasoned that such a reading would render a portion of a *different* section – § 41102(b)(1) – "surplusage." That analysis is wrong.

First, the district court's invocation of the "surplusage" axiom is inconsistent with this Court's canons of construction because the plain language of the statute directs that § 40307(d)'s reach be measured by § 40307(a)'s dimensions, a reading which militates in favor of rejecting the district court's "surplusage" argument. *See Broselow v. Fisher*, 319 F.3d 605, 611-12 (3d Cir. 2003) (rejecting surplusage argument in favor of plain reading of Medicaid Act).

Nor is the district court's "surplusage" analysis persuasive. Section 41102(b)(1) of the Act provides:

> (b) A person may not operate under an agreement required to be filed under section 40302 or 40305 of this title if
>
> (1) the agreement has not become effective under section 40304 of this title or has been rejected, disapproved, or canceled.

The district court proffered that limiting the antitrust exemption to actions under a filed or exempt agreement rendered the phrase "or has been rejected" in § 41102(b)(1) surplusage "because if an agreement 'has not become effective under section 40304,' *it necessarily must have been rejected according to section 40304*." J.A. 42 (emphasis added). But that reasoning is simply incorrect, and the very case presented here shows the opinion's error; an *unfiled* agreement never becomes effective "under section 40304" because it is never affirmatively approved by the FMC *nor* does it become automatically effective following the passage of 45 days *after its filing*. *See* 46 U.S.C. § 40304 (detailing time periods after which filings may become effective).

In contrast, a proper analysis of the "surplusage" question actually supports Appellants' position. The district court's interpretation must be rejected because it would actually render multiple parts of the Act mere surplusage. For example, section 40307(a)(3) exempts from the antitrust laws: "an agreement or activity within the scope of this part, whether permitted under or prohibited by this part,

undertaken or entered into with a **reasonable basis to conclude** that it is—(A) pursuant to an agreement on file with the Federal Maritime Commission and in effect when the activity takes place; or (B) exempt under section 40103 of this title from any filing or publication requirement of this part." (emphasis added).  Yet, under the district court's interpretation, a reviewing court or the FMC would never have to inquire as to whether a carrier had a "reasonable basis" to conclude that subsections (A) and (B) were satisfied, where even **unfiled** agreements are subject to the exemption.  No inquiry into the validity of any belief as to whether the agreement was, or needed to be, filed would ever be necessary – yet that is clearly the inquiry called for by the Act.[5]

As further example, if the district court's opinion is correct, and every action by a carrier pursuant to an unfiled agreement is exempt from antitrust liability, then:

- Section 40301(a), which delineates specific anticompetitive conduct between carriers as covered by the Act, becomes surplusage;
- Section 40301(b), which delineates specific anticompetitive conduct between carriers and marine terminal operators as covered by the Act, becomes surplusage;

---

[5] *See, e.g.,* H. Rep. 98-600, Conference Report to Accompany S. 47, Feb. 23, 1984, at 37 ("At the same time, if parties to concerted conduct are shown to have believed that their conduct was outside the scope of an effective agreement and not exempted from filing requirements, this fact would tend to demonstrate that no 'reasonable basis to conclude' is present.").

- Section 40307(a)(1), which limits the antitrust exemption to activities performed under an agreement that has been filed and is effective becomes surplusage;

- Section 40307(a)(2), which limits the antitrust exemption to activities performed under an agreement that is exempt from filing becomes surplusage;

- Section 40307(a)(3), which extends the antitrust exemption to activities undertaken with a reasonable basis that they were performed pursuant to an agreement that either had been filed or was exempt from filing becomes surplusage;

- Section 40307(a)(4), which extends the antitrust exemption as to services by carriers performed within or between foreign countries unless the agreement has a direct, substantial, and reasonably foreseeable effect on the commerce of the United States becomes surplusage; and

- Section 40307(c), discussing the effect of the removal of "the immunity to the antitrust laws *under subsection (a)*" becomes an incongruity since the antitrust immunity is not measured by the language of subsection (a).

**D.    The district court improperly relied on the legislative history of a bill that Congress rejected, yet failed to credit the legislative history of the bill that Congress actually passed.**

Nor does the legislative history relied upon below support the district court's decision.

First, invocation of legislative history is improper where, as here, a straightforward reading of the statute is available. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997). There simply was no need to resort to analyzing any legislative history in order to interpret the applicable statutory provision. *See Bruesewitz v. Wyeth, Inc*., 561 F.3d 233, 244 (3d Cir. 2009) (noting that legislative history is a tricky "tool of interpretation" since "there can be multiple legislative

intents because hundreds of men and women must vote in favor of a bill in order for it to become a law") (citations omitted); *Szehinskyj v. Atty. Gen. of U.S.*, 432 F.3d 253, 256 (3d Cir. 2005) ("The law is what Congress enacts, not what its members say on the floor.").

Indeed, this case demonstrates the risky nature of resorting to legislative history. The document the district court repeatedly cited and relied upon, H. Rep. 98-53, is a Report from the House Committee on Merchant Marine and Fisheries regarding H.R. 1878, a piece of proposed legislation that was never passed but was instead *tabled* in the House on October 17, 1983 in favor of Senate Bill S. 47 – the bill which actually became The Shipping Act of 1984.[6]

In fact, Appellants' interpretation is consistent with Senate Bill S. 47's legislative history. The Conference Report to Accompany S. 47, H. Rep. 98-600, Feb. 23, 1984, confirms that § 40307(d)'s antitrust exemption was only intended to apply to conduct performed either (a) under an agreement that has been filed and is effective, (b) under an agreement that is exempt from filing, or (c) with a reasonable basis to conclude it was done pursuant to an agreement that either had been filed or was exempt from filing. *See* H. Rep. 98-600, at 28 (noting that when Section 4, "the type of agreements to which the bill applies," is "read in connection

---

[6]    *See* J.A. 44 (citing H. Rep. 98-53 to support conclusion that "a 'secret' agreement was not intended to give rise to private antitrust actions"); *see also https://www.congress.gov/bill/98th-congress/house-bill/1878* (history of bill).

with sections 5 and 7, the effect is to remove *the listed agreements* from the reach of the antitrust laws as defined in the bill"); *see also id.* at 37 ("Section 7 defines the limits of antitrust immunity for conduct pursuant to this Act. . . . Section 7(a)(1) extends antitrust immunity to agreements in effect under this Act.  Section 7(a)(2) extends immunity to activity undertaken 'with a reasonable basis to conclude' that it is pursuant to an effective agreement on file with the Commission or exempt from filing requirements under Section 16.").[7]

Therefore, if recourse to legislative history is called for, the Conference Report for the bill that was passed as the Shipping Act of 1984 supports the plain reading of the Act advanced by Appellants: it is only anticompetitive conduct undertaken pursuant to agreements that were filed (or exempt therefrom) for

_____

[7]   This reading is also consistent with how the legislative history of the Act shows carrier conference agreements should be treated.  *See* H. Rep. 98-600, Conference Report to Accompany S. 47, Feb. 23, 1984, at 28-29 (noting antitrust exemption does not apply to conference agreements that implement boycotts, concerted activity resulting in an unreasonable refusal to deal, or any predatory practice designed to prevent entry by outside competition if "it is found that the activity was undertaken *without a reasonable basis to conclude* that it is pursuant to an agreement *on file* with the Commission and in effect when the activity took place, *or is exempt* from filing requirements of the Act") (emphasis added); *id.* at 29 ("the conferees agree that any antitrust liability arising out of an unlawful boycott or predatory activity be limited to actual or threatened conduct, and that the antitrust immunity granted in section 7 shall continue for general agreements *approved by the Commission*") (emphasis added).

review and scrutiny by the FMC which are rewarded with protection from federal antitrust actions.[8]

**E.    Conclusion: Appellants' federal antitrust claim was improperly dismissed as no antitrust exemption applied to Appellees' anticompetitive conduct.**

As the Fourth Circuit stated in *Gosselin*, the antitrust exemption provided to carriers by § 40307(d) "came with regulatory strings attached;" i.e., submission of the carriers' agreements to review and audit by the FMC.  That conclusion is borne out by a reading of § 40307 *as an integrated whole*, measuring subsection (d)'s scope by subsection (a)'s reach.

Such a reading comports with the way the statute has always been interpreted, ensures the oversight of *admittedly* anticompetitive agreements by the FMC, and honors the "well settled rule that exemptions from the antitrust laws are to be narrowly construed."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 351

---

[8]    *See, e.g.*, G. Garvey, *Regulatory Reform in the Ocean Shipping Industry: An Extraordinary U.S. Commitment to Cartels*, 18 Geo. Wash. J. Int'l L. & Econ. 1, 51 (1984) ("The antitrust laws apply, however, *only* if there is no reasonable basis to believe the activity was identified in an effective agreement or otherwise exempt from the filing requirement of the 1984 Act.") (emphasis added); Restatement (Third) of the Foreign Relations Law of the U.S. § 415 Comment c (1987) (noting section "is addressed to activity unlawful under the antitrust laws and analogous laws, such as those proscribing concerted activity *without approval of the Federal Maritime Commission*") (emphasis added); *id.* Reporter's Note 1 (noting that in the Shipping Act of 1916 and Federal Aviation Act of 1958, Congress authorized the Federal Maritime Commission and Department of Transportation "to immunize agreements *submitted to them* from the antitrust laws") (emphasis added).

(3d Cir. 2010) (quoting *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 231 (1979)); *see also Carnation Co. v. Pacific Westbound Conf.*, 383 U.S. 213 (1966) (reversing dismissal of antitrust treble damage action alleging collective ratemaking not approved by the FMC); *Pinney Dock & Trans. Co. v. Penn Cent. Corp.*, 600 F. Supp. 859, 876 n.12 (N.D. Ohio 1983) (stating "*When an agreement is approved by the FMC*, it is immunized against the operation of the antitrust laws." and citing *Carnation* and *In re Ocean Shipping Antitrust Litigation*, 500 F. Supp. 1235 (S.D.N.Y. 1980), for the proposition that "antitrust immunity *does not extend* to the implementation of agreements *unapproved* by the FMC").

In contrast, the blanket immunity for anticompetitive activity undertaken without regard to the filing, or exemption therefrom, of the underlying agreement created by the district court's decision is contrary to the language and legislative history of the statute, and every other court to have considered the question.

The decision below dismissing Appellants' federal antitrust claim based on the antitrust exemption of 28 U.S.C. § 40307(d) should be reversed.

## II.    In dismissing plaintiffs' state-law claims on conflict-preemption grounds, the district court created a conflict where none truly exists.

The district court also dismissed Appellants' state law claims, holding that such actions "conflict with the congressional purpose of minimizing government intervention and regulatory costs." J.A. 57.[9]

In reaching its decision on this acknowledged question of first impression J.A. 54, 56, the court (a) declined to apply the long-standing presumption against preemption J.A. 49, (b) admitted that the Act is "undeniably silent" on the availability of private remedies under state law" J.A. 52, and (c) agreed that permitting state law claims would actually *promote* one of the four stated purposes of the Act – the "growth and development of United States exports through competitive and efficient ocean transportation." J.A. 50-51.

Nevertheless, the district court found an implied conflict between permitting Appellants' state law claims and a *different* listed purpose – that of minimizing government intervention and regulatory costs.  That holding was erroneous and requires reversal.

---

[9]    *See also* J.A. 48 ("Here, the Court finds that the state laws at issue conflict with the Shipping Act and are therefore preempted because they stand as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress."); J.A. 51 ("the Court agrees with Defendants that the state laws at issue conflict with the Act's first purpose of minimizing government intervention and regulatory costs.").  The court expressly declined to address the question of field preemption.  J.A. 57, n 15.

**A.    The district court's refusal to apply the presumption against preemption conflicts with binding precedent from the Supreme Court and the Third Circuit.**

The district court first erred in its analysis of the state-law claims by not applying the well-established presumption against preemption and, instead, essentially began its analysis by assuming that a conflict existed.

Applying *Wyeth v. Levine*, 555 U.S. 555 (2009), this Court has directed that "*all* preemption cases '*start* with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the *clear and manifest purpose of Congress*'." *Sikkelee v. Precision Airmotive Corp.*, 2016 U.S. App. Lexis 7015 at *14 (3d Cir. April 19, 2016) (quoting *Wyeth v. Levine*, 555 U.S. at 565). The presumption applies here since states have historically enforced laws governing anticompetitive conduct and *in personam* commercial maritime claims.  *See Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) ("Antitrust laws, like blue sky laws, are not aimed at natural-gas companies in particular, but rather all businesses in the marketplace. . . .  This broad applicability of state antitrust law supports a finding of no pre-emption here."); *Madruga v. Superior Court*, 346 U.S. 556, 560-61 (1954) (in an admiralty case noting that "a state, having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit so long as it does not attempt to make changes in the substantive maritime law") (citation omitted).

State statutes aimed at anticompetitive conduct clearly predate the original Shipping Act of 1916, providing over a century of interplay between state and federal antitrust laws, including several Supreme Court decisions on the issue – a historical record which led Professor Hovenkamp to conclude that "courts refuse to find state antitrust laws preempted by federal antitrust law unless the conflict is so sharp that compliance with the state law would require violation of the federal law." H. Hovenkamp, *State Antitrust in the Federal Scheme*, 58 INDIANA L.J. 375, 431 (1983); *see also id* at 375 ("Before 1890, when the first federal antitrust statute was enacted, restraints of trade were regulated largely by state law.").  It has also long been recognized in the maritime arena that, pursuant to the "saving to suitors" clause of the Judiciary Act of 1789, state courts hold concurrent jurisdiction over in personam actions where a state common law remedy traditionally was available. *See* W. Casto, *The Origins of Federal Admiralty Jurisdiction in an Age of Privateers, Smugglers, and Pirates*, 37 AM. J. LEGAL HIST. 117, 140 (1993).

The district court's failure to start from the presumption against preemption, however, clouded its analysis. The district court cited a footnote from *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 374 n.8 (2000), for the proposition that it did not need to apply the presumption.  J.A. 49.  *Crosby*, however, simply left for another day the (then) unsettled question of whether the presumption against preemption applied in a conflict preemption case.  *Id.*  Since then, the more

recent pronouncement from the Supreme Court in *Wyeth* – and by this Court in *Sikkelee* – make it clear that the presumption should have been applied.

The failure to proceed from the proper starting point, giving due regard to the important role state laws play in our federal system, meant that the district court's analysis foundered each time it encountered an uncertain choice – such as the importance due Congress's silence regarding any displacement of state law when it passed the original Shipping Act in 1916, and *especially* when it enacted the 1984 version of the Act and added its 1998 amendments.

**B.     The fact that Congress did not preempt state law claims when it passed the Shipping Act of 1984 should have ended the preemption inquiry.**

The district court should have read the "undeniable silence" of the Shipping Act on the availability of private remedies under the long-entrenched state antitrust laws as evidence that the "clear and manifest purpose" hurdle was not transcended. *See Pa. Med. Soc. v. Marconis*, 942 F.2d 842, 850 (3d Cir. 1991) ("[W]hen Congress remains silent regarding the preemptive effect of its legislation on state laws . . . Congress has failed to evince the requisite clear and manifest purpose to supersede those state laws."); *see also Wyeth*, 555 U.S. at 575 ("The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has

nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them.").

Here, the state antitrust laws the plaintiffs sued under predate the enactment of the original Shipping Act of 1916, and were clearly laws which "Congress was and has been undisputedly aware of" over the years it considered the different pieces of legislation which eventually became the Shipping Act of 1984. *Marconis*, 942 F.2d 850. Indeed, the Court need look no further than 46 U.S.C. § 31307 to find an example of an *explicit* preemption of state law by Congress in the relevant statute (barring *in rem* state law civil actions against a vessel for necessaries).

Indeed, Congressional silence regarding state law claims is especially noteworthy here given that numerous state legislatures had, not long before the time of enactment of the Shipping Act of 1984, passed so-called *Illinois Brick* "repealer" statutes, thereby providing indirect purchasers like Appellants the right to pursue antitrust damages claims despite their inability to do so under the Sherman Act. This was an important issue of which Congress was aware, and the right of the states to act independently in this sphere was again confirmed by the Supreme Court in *California v. ARC America Corp.*, 490 U.S. 93, 105 (1989) ("state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law").

In sum, the well-established presumption against preemption was simply not overcome given the acknowledged silence of Congress on the question of state law claims when it passed the 1984 Act; that should have been sufficient in and of itself for the court below to reject Appellees' conflict preemption argument.

### C.    There is no conflict between Appellants' state law claims and the regulatory scheme administered by the FMC – *especially* with regard to agreements the FMC did not know existed.

Nor is the gravamen of the district court's conflict preemption analysis valid; prosecution of Appellants' claims does not create the conflict required to support the extraordinary finding that all state antitrust laws are impliedly preempted by the Act.[10] As this Court has explained:

> The mere fact of tension between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power. Rather, the principle is thoroughly established that the exercise by the state of its police power, which would be valid if not superseded by federal action is ***superseded only where the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together***.

*MD Mall Assocs. v. CSX Transp., Inc.*, 715 F.3d 479, 495 (3d Cir. 2013), *as amended* (May 30, 2013) (emphasis added).

---

[10]    As noted in *Sikkelee*, conflict preemption occurs when compliance with both state and federal regulations is impossible or when a state law creates an obstacle to the accomplishment and execution of the purposes and objectives of the federal law. 2016 U.S. App. Lexis 7015 at *14.  Only the second part of that analysis is relevant here since Appellees conceded that compliance with both state and federal law in this instance is not impossible, *See* J.A. 398-99, and the "impossibility" prong is neither invoked nor analyzed in the decision below.

The district court reasoned that prosecution of Appellants' claims could conflict with the Act's purpose of "establishing a nondiscriminatory *regulatory process* for the common carriage of goods by water . . . with a minimum of government intervention and regulatory costs." J.A. 50-51.

It makes no sense to say that permitting state law claims based on conduct undertaken pursuant to agreements *never filed with or regulated by* the FMC creates an obstacle to administering the *regulatory process* of that body. The opinion acknowledges that the FMC has never reviewed or scrutinized the *admittedly unfiled* agreements at the heart of Appellants' claims. That fact alone is sufficient to demonstrate that there is no possibility of conflict here.

If anything, permitting Appellants' claims furthers the FMC's regulatory process by incentivizing carriers to submit their agreements for review by the FMC so that they may secure exemption from antitrust laws, including actions brought by parties fulfilling the significant role of private attorneys general. *See generally ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 300 (3d Cir. 2012) ("Significantly, in the antitrust context, a damages award not only benefits the plaintiff, it also fosters competition and furthers the interests of the public by imposing a severe penalty (treble damages) for violation of the antitrust laws. Thus, if Plaintiffs are not able to pursue damages, not only will they be unable to recover for the antitrust

injury [the defendant] caused, the policy of deterring antitrust violations through the treble damages remedy will also be frustrated.") (citations omitted).

Indeed, reading the Act to prohibit filing of private antitrust claims, state or federal, based on conduct undertaken pursuant to filed or exempt agreements – the position Appellants have consistently advocated – means that the hypothetical the district court posited as an example of a "borderline absurd" consequence is impossible and certainly not sufficient grounds to support its analysis. The hypothetical the district court posited was:

> If silence with respect to state laws was dispositive, then the Shipping Act's grant of immunity from the "antitrust laws" for filed and effective agreements would only apply to federal laws, given the explicit statutory definition in 46 U.S.C. § 40102(2). Thus, under a plain reading of the statute, if an agreement is filed and effective and an ocean common carrier is entitled to full immunity under the Sherman Act and Clayton Act, a state attorney general or consumer could nevertheless pursue antitrust claims against the carrier for the same agreement under state law. Although this scenario is admittedly hypothetical (since the facts before the Court involve an unfiled, secret agreement), it demonstrates that the Shipping Act's silence with respect to state law is not dispositive, because such a result is borderline absurd and is clearly at odds with Congress's intent. *See* J.A. 52-53 & n12.

But not only is the imagined scenario different than the case before this Court, such an altered factual circumstance would and should result in a different outcome. Appellants agree that should the case ever arise where a plaintiff files state law antitrust claims seeking to impose liability for actions done pursuant to a

filed or exempt agreement, those claims should be preempted since the carriers ought to receive the protection of § 40307(d); but that is not this case.

Indeed, the district court's own assertion that its straw-man hypothetical "is clearly at odds with Congress's intent," stands in an inherent conflict with its premise that the Shipping Act's grant of immunity from the "antitrust laws" was limited *by Congress* to *federal* antitrust laws, "based on the statutory definition in 46 U.S.C. § 40102(2)".   Congress cannot have [via the § 40102(2) definition] intended to *limit* the exemption to federal antitrust actions while *simultaneously silently* intending to preempt state law claims.

Moreover, while discerning a potential conflict with the *first* listed purpose of the Act, the lower court admitted that pursuit of Appellants' state law claims would actually *promote* the Act's *fourth* purpose: furthering "competitive and efficient ocean transportation and … a greater reliance on the marketplace." J.A. 51.  To the extent the differing purposes are to be weighed, Appellants submit the acknowledged promotion of the Act's fourth purpose, which favors the interests of shippers, should outweigh the hypothetical conflict regarding the first purpose, which furthers the interests of carriers at the expense of free market competition.[11]

---

[11] *See* C. Buderi, *Conflict and Compromise: The Shipping Act of 1984*, BERKELEY J. INT'L L. 311, 341 (1984) (analyzing the debates and proposals which ultimately resulted in the Shipping Act of 1984 and concluding that the effort to create an anticompetitive regulatory policy favorable to the organized liner industry "was soundly defeated."  "The interests of large shippers and the

### D.    No other court has found conflict preemption of state law claims under the Shipping Act.

While the precise question of whether the Shipping Act preempts state antitrust laws has never been squarely addressed, other courts that have considered the interplay of the Act and state laws have consistently found no preemption.

First, both of the federal cases to have addressed conflict preemption and the Shipping Act – *Pacific Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990) and *Wylie v. Foss Mar. Co.*, No. C 06-07228 MHP, 2008 WL 4104304 (N.D. Cal. Sept. 4, 2008) – held the state laws at issue were not preempted.  In both cases, the courts (correctly) began with the presumption against preemption which the district court below declined to apply, and ultimately held that no actual conflict existed between the requirements of the Shipping Act of 1984 and application of California's overtime pay laws.  And while the opinion below noted the provisions at issue in *Aubry* and *Wylie* were in a different subtitle of the Act, Appellants submit that the analysis – and the outcome – should be the same here.

The district court should not, however, have so easily dismissed the result and analysis in *Zachry-Dillingham v. Am. President Lines, Ltd.*, 739 S.W.2d 420 (Tex. App. – San Antonio 1987, writ denied), in which a Texas court of appeals held that even the extensive statutory requirements surrounding the filing and

---

economic argument presented for justifying open competition in the liner trades were obviously persuasive to Congress and largely responsible for this outcome.").

regulation of tariffs under the Shipping Act did not preempt Texas state law claims

of fraud and unfair business practices:

> The Shipping Act's tariff filing requirements emphasize the rights of shippers. There is no evidence of congressional intent to grant immunity to carriers for their fraudulent acts. The grant of immunity from the Texas DTPA would provide carriers with a shield whose existence is not directly related to the accomplishment of the purpose of the tariff filing requirements. Immunity from the Texas DTPA is not necessary to the accomplishment of any congressional objective expressed by the Shipping Act.

> Both the language of the Shipping Act and its legislative history, indicate that it was intended to prevent unfair discrimination against shippers, not to create a defense to unfair competition by carriers. The Shipping Act and the Texas law are complementary. Enforcement of a tariff in circumstances where there is collusion between a shipper and carrier would work to the unfair detriment of the shipper, while enforcement of the Texas law prohibiting fraud and unfair business practices fosters competition by protecting the shipper against unfair business practices of a carrier. Further, the argument that the DTPA treble damages penalty constitutes a rebate of a shipping charge has previously been rejected by the Supreme Court in *Carnation,* where the Court considered and rejected the argument that treble damage awards under anti-trust law were equivalent to unequal rebates of a shipping charge.

*Id.* at 423. Nevertheless, the court below discounted the Texas court opinion

claiming the decision was "entirely devoid of analysis with respect to Congress's

purpose of minimizing government intervention and regulatory costs." J.A. 56.

But again, this reasoning is flawed. The decision shows that the Texas court

*did* consider *both* the regulatory duties of the FMC, as well as the intent of

Congress, in a well-reasoned opinion. *Id.* at 423 (noting that grant of immunity

from a claim under the Texas DTPA does not impede "the accomplishment of the

purpose of the tariff filing requirements," nor is it "necessary to the accomplishment of any congressional objective expressed by the Shipping Act").

In fact, the Texas court's analysis presents the *precise* issue argued herein: in holding the Act did not safeguard carriers from liability under Texas common law fraud and statutory unfair business practices claims, the court affirmed that the Act's stated purpose of minimizing *regulatory* burdens on carriers should not be granted preference over its *other* stated purpose of promoting competition to benefit (consumers), citing as support the U.S. Supreme Court's analysis in *Carnation* that treble damage awards were *not* preempted by the regulatory scheme of the Shipping Act. *Id.*; *see also* 46 U.S.C. § 40101(4) (Act seeks to promote competition among ocean transporters). The court below should not have so blithely distinguished the analysis in *Zachry-Dillingham*.

**E.    The court below erred in relying on inapplicable legislative history to support its finding of conflict preemption.**

Instead of ruling in accordance with the decisions above, the district court again turns to the legislative history of H.R. 1878 to find support for its determination of conflict preemption. J.A. 54-57. The district court citeed H. Rep. 98-53, and the discussion of that same report in *Seawinds, Ltd. v. Nedlloyd Lines, B.V.*, 80 B.R. 181, 184 (N.D. Cal. 1987), *aff'd*, 846 F.2d 586 (1988), to assert that the Act provides "the exclusive remedies and sanctions" for violations of the Act, and that the FMC holds "exclusive jurisdiction in administering all of the

provisions of the Shipping Act as they relate to international liner shipping regulations." J.A. 54-55.

That reliance was misplaced. First, the block quote in the opinion improperly references "the Shipping Act of [1984]" where the actual report reads "the Shipping Act of 1983." *See* J.A. 54, quoting H. Rep. 98-53 at 12, 177. There is a reason the original read "Shipping Act of 1983" – that is what H.R. 1878 was intended to become, it was just never passed. Rather, S. 47, not H.R. 1878, became law, which this brief discussed in detail earlier.

More important, though, is the fact that the next paragraph of the report clarifies that the problems of parallel jurisdiction and "uncertainty" that H.R. 1878 was intended to resolve concerned "judicial decisions interpreting the 1916 Act which have nullified legal, commission approved *tariffs* that were put into effect pursuant to an agreement which, subsequent to its approval, was found to be unlawful." *See* H. Rep. 98-53 at 12, 177, citing *Sabre Shipping Corp. v. American President Lines*, 285 F. Supp. 949 (1968); 395 U.S. (1969). Nowhere does the Committee Report cite to, discuss, or give any indication that H.R. 1878 was intended to overturn the Supreme Court's decision in *Carnation*, which recognized that Congress had limited the antitrust exemption in the 1916 Act to activities undertaken pursuant to agreements which had been approved by the FMC. *Carnation*, 383 U.S. at 216.

And finally, never in the Conference Report for the Shipping Act of 1984 –

H. Rep. 98-600 – is there any mention of or discussion intimating that the FMC

was to possess exclusive or primary jurisdiction over claims brought before it

*except* for "the remedies and regulatory standards applicable to assessment

agreements." H. Rep. 98-600 at 30. Again, the fact that Congress gave the FMC

exclusive power to decide matters concerning assessment agreements, and did *not*

bestow such exclusive authority over any other area – as the Merchant Marine and

Fisheries Committee hoped the 1983 Act might have – is compelling evidence

against any finding that it was the "*clear and manifest purpose of Congress*" to

preempt all state antitrust laws on this record.

### F.    The district court's decision conflicts with binding precedent of the U.S. Supreme Court permitting prosecution of claims outside the ambit of the FMC.

Finally, the district court appears to have tried to mitigate the harsh nature of

the dismissal with the assertion that Appellants' claims would be "within the

purview of the FMC complaint process," J.A. 57, but provides no explanation of

why that is correct or how it is relevant.

Never does the court explain how the rules and procedures of the FMC

would treat the claims presented by Appellants – class actions based on multiple

state antitrust and consumer protection laws for indirect purchasers of Appellees'

services. Never does the opinion actually invoke or buttress application of the

primary jurisdiction doctrine as it might apply to this record, and nowhere is the case for a *sua sponte* application of the doctrine made. To the extent the opinion intimates any such finding based on the legislative history of H.R. 1878, that issue was addressed *supra.*

Furthermore, as the U.S. Supreme Court explained in *Carnation*, Appellants had a *choice* of proceeding in a federal district court – a forum well experienced with antitrust class actions – or before the FMC by asserting claims under the Shipping Act:

> "Petitioner's failure to seek Shipping Act reparations does not affect its rights under the antitrust laws. *The rights which petitioner claims under the antitrust laws are entirely collateral to those petitioner might have sought under the Shipping Act.* This does not suggest that petitioner might have sought recovery under both, but *petitioner did have its choice.*"

*Carnation*, 383 U.S. at 224 (emphasis added). And again, as noted, nothing in the legislative history of the Shipping Act of 1983 or 1984 shows any intent by Congress to alter the holding of *Carnation* one whit; yet the ruling below eradicates the choice sanctioned by the Supreme Court, *de facto* overruling its clear directive recognizing a choice of forum.[12]

---

[12] In order to protect their claims, based on the ruling by the district court, Appellants have filed a complaint with the FMC pending the outcome of this appeal, even though the ruling in *Carnation* allows them to choose the forum in which they wish to pursue their claims.

**G.    Conclusion: The heavy burden to justify dismissal of Appellants' state law antitrust and consumer protection claims was not met; there is no conflict between prosecution of those claims and administration of the Act's regulatory scheme by the FMC.**

The analysis and decision of the court below manifestly does not satisfy the precedential standard of concluding that it was the clear and manifest purpose of Congress to preclude the application of over a century of state antitrust and consumer protection laws to Appellees' admitted illegal acts; especially on this record where all parties (and the court below) acknowledge the conduct complained of was undertaken pursuant to agreements never filed with, considered, *or regulated* in any way by the FMC.

**III.    The district court erred in concluding that it lacked subject matter jurisdiction to effectuate settlements with the two largest defendants.**

**A.    The court had jurisdiction to grant the relief sought because it could have severed the settled claims and administered the Rule 23 procedures for certification and approval of the settlements.**

Initially, in ruling on Appellants' motion for reconsideration under Local Rule 7.1(i) and Rule 59(e), the district court stated that it has *no jurisdiction* to determine the motion because the upshot of its order dismissing Appellants' claims based on conflict preemption is "that jurisdiction over the claims of the type asserted by [Appellants] rests solely with the FMC in the first instance." J.A. 64. That is incorrect.

The district court improperly conflated the merits of the plaintiffs' claims with its subject-matter jurisdiction over those claims. A federal court must generally determine whether it has subject matter jurisdiction at the outset of litigation and must always make this determination before deciding the merits of a particular case. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Here, it is undisputed that subject matter jurisdiction existed at the outset of the litigation. There was federal question jurisdiction because the plaintiffs sued for violations of federal antitrust law as well as under CAFA, 28 U.S.C. § 1332(d)(2). These bases for subject matter jurisdiction granted the district court authority to effectuate the settlements, even if the district court concluded that the plaintiffs' claims were preempted and thus failed on the merits.  The district court's finding that the plaintiff's claims were preempted in no way divested it of subject matter jurisdiction. *See In re Processed Egg Prods. Antitrust Litig.*, 836 F. Supp. 2d 290, 300 (E.D. Pa. 2011); *see also Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) ("Only 'complete' preemption affects federal subject matter jurisdiction. 'Conflict' preemption relates to the merits of a claim.").  The district court's finding that the plaintiffs' claims were preempted in no way divested it of subject matter jurisdiction. Because there was subject matter jurisdiction, the district court had jurisdiction to effectuate the settlements, irrespective of whether it ultimately concluded that the plaintiffs' claims were

preempted.[13]  *Cf. In re Stock Exchanges Options Trading Antitrust Litigation*, 317

F.3d 134 (2d Cir. 2003) (holding that lower court should have considered proposed

class settlements because it had subject matter jurisdiction to effectuate those

settlements prior to dismissing antitrust claims on the basis of implied repeal).

Further driving home the point that subject matter jurisdiction was never

questioned is that the defendants never moved to dismiss this action under Fed. R.

Civ. P. 12(b)(1) for lack of subject matter jurisdiction, but instead sought dismissal

under Fed. R. Civ. P. 12(b)(6) based on the merits of the plaintiffs' claims.

**B.     The lack of a filed motion for approval of the settlements did not provide a basis for the district court to refuse to retain jurisdiction.**

In refusing to exercise its subject matter jurisdiction, the court found it

important that a motion for approval of the settlements had not been filed before it

chose to dismiss the claims on their merits.  J.A. 64-65.  Under the law of this

Circuit, that should not have been a relevant factor in the district court's analysis,

much less a barrier to the exercise of its jurisdiction.

It is undisputed that Appellants and the settling defendants had

acknowledged their agreements before the Court and sought a stay of proceedings

in order to effectuate the settlements. "An agreement to settle a law suit,

---

[13] Moreover, as noted above, the doctrine of primary jurisdiction was not explored or made the basis of the decision below, and the opinion's dismissal based on conflict preemption does not implicate or "trigger" the primary jurisdiction doctrine or divest a district court of jurisdiction to grant the requested relief.

voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970); *see also Good v. Pennsylvania Railroad Co.*, 384 F.2d 989, 990 (3d Cir. 1967) ("The obligation to remain bound by a valid agreement of settlement duly entered into by counsel with the authority of his client is one which pervades the law.").

The lack of a formal filing with the district court seeking preliminary approval of the settlements was no obstacle to the relief requested.  The district court abused its discretion in rejecting the opportunity to permit the assemblage and submission of such documentation to effectuate the overriding public policy favoring settlement, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

C.    **The district court's refusal to effectuate the settlements blocks American consumers from compensation for their antitrust injuries and is inconsistent with "the strong judicial policy in favor of parties voluntarily settling lawsuits."**

On this record, whether it chose to act pursuant to Rule 59(e) (to prevent manifest injustice) or Rule 60(b) ("any other reason that justifies relief"), the court should have exercised its discretion and its jurisdiction to effectuate the settlements agreed to by the parties and bring to a close a large portion of the case before it.

*Halderman v. Pennhurst State School and Hosp.*, 901 F.2d 311 (3d Cir. 1990); *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 80 (3d Cir. 1982) (noting the "strong judicial policy in favor of parties voluntarily settling lawsuits"); *In re Johnson*, 2004 Bankr. Lexis 2606 (Bankr. E.D. Pa.) ("Furthermore, a trial court has jurisdiction to enforce a settlement agreement made by litigants in a pending case. This jurisdiction is founded on the strong public policy favoring the settlement of disputes and avoidance of costly and time consuming litigation.") (citing *Pugh v. Super Fresh Food Markets. Inc.*, 640 F. Supp. 1306, 1307 (E.D. Pa. 1986) and *Rosso v. Foodsales. Inc.*, 500 F. Supp. 274, 276 (E.D. Pa. 1980)); *see also In re Stock Exchanges Options Trading Antitrust Litigation*, 317 F.3d 134 (2d Cir. 2003).

## CONCLUSION

The court below erred when it concluded that Appellants have no redress under federal antitrust laws for the harms caused by Appellees' admitted illegal acts. The court incorrectly held that the Shipping Act's antitrust exemption immunizes Appellees' anticompetitive agreement even though that agreement was never filed with the FMC. This erroneous decision should not stand. Affirming the district court's decision would give the ocean carriers absolute immunity from judicial scrutiny for all anticompetitive activity. Such blanket immunity is contrary to a plain reading of the Act as well as its legislative history. In reaching

its unprecedented decision the district court ignored applicable precedent and the consistent directive from the U.S. Supreme Court that antitrust exemptions be narrowly construed.

Similarly, the court erred when it chose to ignore the presumption against preemption and favor a hypothetical conflict between Appellants' claims and one of the Act's statements of purpose over the admitted promotion of free market competition.

Finally, the court had subject matter jurisdiction to exercise the power it held to effectuate the settlements agreed to below and bring to a close a large portion of this case.

For the above reasons, the judgment of the district court should be reversed and the matter remanded.

Dated: June 20, 2016

/s/ Warren T. Burns
Warren T. Burns
Daniel H. Charest
Will Thompson
E. Lawrence Vincent
**BURNS CHAREST LLP**
500 North Akard, Suite 2810
Dallas, Texas 75201
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com
wthompson@burnscharest.com
lvincent@burnscharest.com

## CERTIFICATE OF SERVICE

I hereby certify that, on June 20, 2016, the foregoing Opening Brief, Volume I of the Joint Appendix, and Volume II of the Joint Appendix were served electronically through the ECF to all opposing parties.

On the same date, an electronic copy of the Opening Brief and Appendix Volume I and II was electronically transmitted to the Clerk of the United States Court of Appeals for the Third Circuit.

An additional seven copies of the Opening Brief of Appellant, and four copies of Volumes I and II of the Joint Appendix were sent by Federal Express overnight delivery to:

Office of the Clerk
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

Dated: June 20, 2016

/s/ Warren T. Burns
Warren T. Burns

## CERTIFICATE OF BAR MEMBERSHIP

WARREN T. BURNS certifies as follows:

1.      I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: June 20, 2016

/s/ Warren T. Burns
Warren T. Burns

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

WARREN T. BURNS certifies as follows:

1.      The text of the electronic and hard copy forms of this brief are identical.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: June 20, 2016

/s/ Warren T. Burns
Warren T. Burns

## CERTIFICATE OF VIRUS CHECK

WARREN T. BURNS certifies as follows:

1.      I caused the electronic version of this brief to be checked for computer viruses using antivirus scanner Webroot on June 20, 2016. No computer virus was found.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: June 20, 2016

/s/ Warren T. Burns
Warren T. Burns

# WORD COUNT

WARREN T. BURNS certifies as follows:

1.      This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,795 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word for Mac, Version 15.22.1, in 14 point Times New Roman font.

3.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: June 20, 2016

/s/ Warren T. Burns
Warren T. Burns